Eugene Choi is here for the appellants, and Sherry Kovas is here for the appellees. Mr. Choi, you may begin. Thank you, Your Honor. My name is Eugene Choi. I'm here with my co-counsel, Clare Shermer, and Frank Dittmar, who represent the appellants who are students with disabilities. I'm here today because the Cobb County School District discriminated and continues to discriminate against our clients when they don't consider accommodations that they need. This is in violation of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. I would first like to explain the legal errors made by the district court, which should give context to why this appeal is not moved. This is a straightforward ADA case. The students, due to their disabilities, are requesting accommodations, and the school district is refusing to consider any accommodation that contradicts district-wide COVID policy. What type of accommodation are you requesting now? Are you asking for a mask mandate, or are you asking the school board to develop a policy in line with the CDC guidelines? Which one of the two? We are asking for, out of those two, it is to follow the CDC recommendations, which currently state that students with disabilities, all the accommodations need to at least be considered, and to the extent they are needed. So you are asking, you want the school board to comply with the CDC guidelines? Is that the relief you are requesting? No, Your Honor. We are asking for the requested accommodations that the students requested for, that they at least be given consideration and implemented to the extent that they are needed for safe access in a multi-layered approach. The violation here is that we skipped that first step because the district refuses to modify its rigid policy to accommodate students with disabilities. This kind of take it or leave it, one size fits all approach has left teachers, school But the school board's policy now, right now, is consistent with the CDC guidelines, right? No, Your Honor. The CDC guidelines specifically state that regardless of community level, regardless of community recommendations as a whole, individuals that are particularly vulnerable still need at least consideration of accommodations that go beyond those guidelines. So I am incorrect, is my understanding incorrect that the current guidelines only recommend universal masking for high community levels and Cobb County is at a low community level? Those are the community guidelines, yes, Your Honor. But the CDC as well as the United States Department of Education has said under ADA Section 504 and the science supports that children with vulnerabilities may need accommodations that go beyond that given their situation, given the higher risk for serious health issues or even death. So what we are asking for, again, we skipped that first step. We are not, just to be clear, we are not asking for universal masking at this point. Now we may come to a time where we are at that point again when this case is filed. You're not asking for a mask mandate? No, Your Honor. So what, tell me exactly what you're asking for? So to give you specifics, we are asking for some degree of masking as an accommodation. So it wouldn't be universal. It would be limited to the extent that these students would need them to safely attend their school. The school district is very big. It has I think 100,000 individuals. We are not asking, we are not asking that they all be masked at this point. We are asking that accommodations be considered and to the extent that they are needed, that they be implemented for these children. What accommodations? Yes, Your Honor. Masking to some degree, social distancing, because right now social distancing is part of their policy, but we are asking for it beyond when they just want it. Right now, the district determines when it's appropriate or feasible and contact tracing at this point. They have completely stopped contact tracing, which is an important tool, particularly for our parents because they need to know if one student or three students or half the class tested positive over the last week or two, they need to be informed of that because of their children's condition. Counselor, am I correct though that the district court did not have an opportunity, or I understand that there was a lot of supplemental briefing, but at least in its order, did not address any reasonable modifications in terms of the school, meaning it focused instead on education as a big picture idea and found the reasonable modification to be virtual education. Do we have a record before us that would facilitate, as Judge Wilson has asked, an ability to decide if reasonable modifications are feasible under the ADA and the Rehabilitation Act? Because the record, at least the order that we reviewed, doesn't get into any, to Judge Wilson's point, any of these types of proposals. It simply just says, you have virtual, we're not going to go ahead and go beyond that. Is that right? That is correct, Your Honor. We contend that that's an error of law because they got a benefit wrong, but therein lies a problem is that the district court did not weigh the evidence to determine reasonableness or necessity or efficacy or whether it would fundamentally alter their programs. This is the standard. This is the correct legal standard under the ADA in Section 504. And let me ask you to that point, Judge Wilson and I agree it's trying to frame what you're asking for. I'm also trying to figure out what theory you're proceeding under generally. So am I correct that you are not going after a disparate treatment claim? You are focusing simply on reasonable modification and what at least to me appears to be an Olmstead claim. Am I correct in that? Yes, Your Honor. I think generally that is a correct framing of it. We certainly are not seeking a disparate treatment claim. And that's part of the error is that the district court did require showing a disparate treatment in order to find an ADA violation. But to be more specific, Your Honor, we think that the proper standard is what the Supreme Court did in Olmstead. It looked at the implementing regulations of Title II to interpret the elements of the regulations, which this Court has said over and over again have the force of law and are due respect. Well, what Judge Batten said in this case, he says the virtual schooling option provides a, quote, robust learning environment, close quote, and is reasonable under the circumstances. And then it seems, I mean, he says you don't get your preferred accommodation. You don't get what you want. You don't get your preferred accommodation. What you are entitled to is meaningful access to education, and that's what your clients get. What's wrong with that? Well, Your Honor, the benefit, the district court redefined the benefit when it moved on to the reasonable accommodation analysis from in-person education to education generally. The problem with that is that runs counter to the intent and plain language of the statutes themselves as well as decades of disability rights case law. The statute states that individuals with disabilities are entitled to the benefit of all programs, services, and activities that the public entity offers, and you're correct, Your Honor. I think that's what the district court did is that it said, okay, we're no longer looking at the in-person program or activity, that being the benefit. We're going to redefine the benefit to education generally, and because there is a separate segregated virtual program, and the district court found it adequate, they got their education. We contend that is an error of law. In Alexander v. Choate, the Supreme Court specifically warned courts not to define the benefit in a way that effectively precludes individuals with disabilities what they're entitled to. I think two cases illustrate this point very well. The first one is National Federation of the Blind v. Lamone, and People First of Alabama v. Merrill. In Lamone, the Fourth Circuit held that contrary to the state's contention, the focus scrutiny should be on absentee voting, not voting generally. And the district court held, I'm sorry, the Fourth Circuit held that plaintiffs were entitled to accommodations to access absentee voting. And People First of Alabama v. Merrill, I think, is most on point with this case. Their plaintiffs, their disabilities made them particularly vulnerable to COVID-19. They were challenging a de facto ban on curbside voting. They said they needed that to be able, as an accommodation, to vote in person. The state argued that they had the benefit of absentee voting, therefore, they had access to voting generally. And there, the Alabama district court held that if you're going to provide options to all voters on absentee and in person, you must make both programs accessible to voters with disabilities. And that's exactly what we have here. Like Merrill, the school district offers virtual programming and in-person education. They must make both programs accessible to students with disabilities. And both sides agreed that the benefit at issue is in-person education. If you look at, during the motion hearing, the transcript document 63, starting on page 24, paragraph 25 and going on, both sides agreed that the focus of scrutiny should be in-person education, yet the district court redefined it to education generally. It seems to be, talking about a reasonable accommodation, that the school district, according to your argument, would need to conduct some sort of individualized inquiry into what the students' needs are. But once we start talking about that, don't we get into IDEA territory, where potentially you would have needed to exhaust your remedies? Your Honor, I think that issue, I think it's clear that the gravamonte of our complaint is discrimination. It's lack of access, meaningful, safe access to a program. We're not necessarily challenging the adequacy of the education. It's more of the segregation and lack of access to what they're entitled to. And under FRI, the hypothetical test, we briefed that and I think we passed that. I would also point to the cases that we cited that specifically addressed this issue in the school context in our brief. The last point I wanted to make is the district court never addressed the segregation issue. We allege segregation, that a separate virtual program would not be a reasonable accommodation or modification to that form of discrimination. That would not only violate the integration regulation, it would also contradict Olmsted as well as this court in JS. So the students write, by the way, the last point I made, virtual is not the same as in-person education. There are, if I can finish this sentence, Your Honor. Go ahead. Well, I just wanted to make a point that we don't even have separate but equal, but we have separate but inferior for the obvious reasons that children who are capable of going to in-person get activities, benefits that our students cannot. Thank you. All right. Ms. Culvis. Good morning, Your Honor. My name is Sherry Culvis. I'm here for the appeals. May it please the Court. We are almost three years deep into this pandemic. Kids have been back safely in school for two years now. The school district has not had a mask mandate for 16 months. School districts across the nation and throughout Georgia have all dropped their district-wide mask mandates. Yet here we are in November of 2022, and these four appellants, two of whom no longer attend the Cobb County schools, want to wrestle local control over the health and safety decisions and away from the school district. Before what I just heard a minute ago, they wanted to place the decision-making on the accommodations for these four unique students exclusively in the hands of the CDC. And at the district court level, they wanted to force more than 125,000 students and employees who they may never encounter in 112 school buildings they may never enter into wearing a mask against their will. Is that what they're asking for now? I mean, it seems like they're asking for something different now, a better accommodation, because the virtual learning environment is not a reasonable accommodation. You mentioned social distancing and other things. Your Honor, I've had a difficult time tracking what the arguments of the appellants have been in this case, and I believe they've been changing. At the district court level, they saw a universal mask mandate. If you go back and review the complaint, the preliminary injunction motions, the transcript of the hearing, and the discussions by the court, it was clear to everyone the relief they were seeking was a universal mask mandate because the CDC at the time was recommending universal masking. Does that answer your question? Well, yes, that answers my question. Your Honor, the district court correctly rejected their attempt to compel a district-wide mandate and chose instead to keep the court out of political health fights. I want to speak to the failure to accommodate claim. We are not standing before you saying that the district does not have to provide reasonable, and that term was lost in an appellant's statements to you today. We are not standing before you saying that we do not have to provide reasonable accommodations to these students, and we are not saying that they must be educated virtually. What the district is saying is that they have reasonably accommodated these students by providing both access to in-person education through reasonable safety measures and by providing a robust, non-segregatory virtual program, and that's what the court found as well. And let's not forget all of the health and safety measures that are in the record of the district court. The school district provided 50 distinct COVID safety measures it has in place to combat COVID-19. And now here we are again in November 2022, when all school-age children and adults are eligible for vaccinations, when the majority of the population in Cobb County has been fully vaccinated, boosters are widely available, antiviral treatments are present, and as your honor correctly pointed out, Cobb County community COVID levels are low. Counsel, can I break on that for a second? You're stating that you have met somewhere in the middle, because I agree. When you look at the briefing and the papers below, it was a little unclear to me what exactly you're requesting. What I'm hearing today is we have two polls, right? We have the virtual only option and we have the full mask mandate. Your opponent is saying no longer want the mask mandate. You just pointed out that virtual is not the only accommodation, that there are some safety measures in place that have been taken by the school board that would allow some of these children to return to school in lieu of virtual. Am I correct in that? Yes, your honor. That's our position below as well. Okay. And do you believe that the district court had an opportunity to address the Olmstead claim? Because when I go back and look, I think that there was a lot of focus on the virtual option, but the segregation component of Olmstead didn't seem that it was fleshed out. But do you believe that's been addressed below? Your honor, I do believe it was addressed. Again, I don't know that it was played terribly effectively where it was a focus of the district court, but the district court had evidence from the school district that there was no segregation. For example, we put into evidence, and I may be incorrect, but I thought that the district court had opined on this, that 84% of the students that attend virtual programming are general education, non-disabled students. That statistic in itself defeats the segregation claim. We put into evidence in response to the isolation claim that students are attending synchronous instruction. They have the opportunity to participate in group project with non-disabled peers. They have the opportunity to participate in live video conferences and chats with their teachers and their fellow peers. And that program is extremely effective. As you see in the record before the court, the students are successful in the program. Your honor, I also just want to mention briefly the mask science because this case was 100% about a universal mask mandate at the district court level. And the school district put into evidence, expert testimony, scientific research, and in COVID rates between school systems that do and do not mandate masks. Well, they're coming to you today and they're saying, we want our preferred accommodation. We want one thing and one thing only at the time, a universal mask mandate. Now it sounds like the CDC guidelines. The circuit law in this court is very clear, your honor, that public entities only need to provide a reasonable accommodation, not a plaintiff's preferred or requested accommodation. And I'm citing to Fridell versus Sun Communities from this circuit in 2021. I'm not aware of one circuit case that has required a district wide mask mandate or strict compliance with CDC guidelines as a reasonable accommodation under the ADA. In fact, I'm aware of the opposite. We supplemented our briefing, your honors, with E.T. versus Paxton, a 5th Circuit case from July 25th, 2022, in which the 5th Circuit reversed the district court order and allowed a statewide ban on school mask mandates to be enforced by the attorney general. And in fact, the 5th Circuit held that a plaintiff's alleged increase of COVID-19 or COVID-19 repercussions does not satisfy Article 3's injury impact requirement. It went on to identify that, of course, the ADA, and we know this, right, the ADA does not guarantee equal access. It guarantees reasonable access by way of a reasonable accommodation. And I'd like to quote, I think, a very telling portion of that case. It is plainly within the state's power to remove one possible accommodation from consideration so long as other reasonable options remain. And it is transparently wrong to equate a statewide ban on mask mandates with denying the children an individualized assessment of their needs. And, your honor, we have other favorable cases denying preliminary injunction, motions seeking a mask mandate, Doe v. Delaware Valley School District, and Hayes v. DeSantis out of the Southern District. Counselor, are you disputing the education generally versus in-person education split? It sounds like you are not maintaining that virtual school is a reasonable modification for in-person education. I'm hearing that you have made accommodations, perhaps not the preferred ones, but accommodations have been made to facilitate in-person. So this is not a zero-sum game, the way the school board sees it, that if you don't like it, your preferred is to be on, but you're going to get only virtual. You're saying there is something in the middle. Am I understanding that right? I think I can answer that question by affirming what you're saying, if I may explain. Yes, please. The school district's position is that, yes, we have to reasonably accommodate for reasonable access to in-person instruction. Okay. But that's not possible. It is absolutely appropriate to consider, as another reasonable accommodation, a robust virtual program, which, of course, in this case was not secretory, was not isolating, and was not inferior. I want to speak for a moment to the argument that we should follow the CDC guidelines, no matter what they may be. Because if you look back at the district court briefing, and at the appellate briefing in this case, the argument was that the school district should hand over authority to the CDC and follow the guidelines put in place by the CDC, no matter what those guidelines might be yesterday, today, or tomorrow. First of all, I'd argue to you that providing a reasonable accommodation under the Americans with Disabilities Act does not mean blindly following whatever the then-recommendations of the CDC, a federal political national agency, might be. There's nothing individualized about that approach. The CDC guidelines, which are just suggestions, might provide too little accommodations for a student, they might provide something different, or they might provide too much. Nowhere in the ADA or 504 does it say that a school must strictly comply with the CDC's recommendations. And we know, of course, having the benefit of being in November of 2022, that the CDC guidelines changed a lot. At the beginning of this pandemic, they recommended non-masks. At the time before the district court, they recommended social distancing. They're no longer recommending social distancing in school. Yet somehow the appellants are here asking you today for social distancing, which again flies in the face of what they were asking for at the court below. So just so I'm clear, would you tell me again what you're saying the accommodations are that have been made specifically? The accommodations are the 50 robust safety measures that the school district has put in place to combat COVID-19 in the schools. And what are those? You don't have to list all 50, but generally speaking. I might fail. I might fail that test. What are they? They're extensive ventilation, air purification, sanitization, social distancing where possible. The recommendation of wearing masks, the provision of masks if you want one, of course, the permission of wearing masks. They are. In the recommendation of wearing masks. Meaning attempts to convince folks, please wear a mask, right? We strongly recommend, but do not require you to wear a mask. All of those accommodations or those safety measures are in the record before the court, Your Honor. Additionally, in the record is some evidence relating to the 504 and IEP teams that met to address the specific accommodation requests by the plaintiffs. And I think what we're going back to is a rigid unwillingness to consider any accommodation other than at that point in time, a district-wide mask mandate. And let's not be fooled. They never once asked the district court to allow their class or the students that they work with and the teachers that they work with to be required to wear a mask. That was not the request. The request was for 125,000 individuals to wear a mask. If, as you say, the CDC guidelines change back and forth, that's an indication that the case is not moot, isn't it? Because it would fall within an exception to mootness that it's capable of repetition but evading review. I think that's an excellent question and I think it's a close point. Our position is that because the relief being sought at the district court level was a universal mask mandate and because that recommendation has now changed, this case is moot and it is not capable of repetition but evading review. I want to speak one very quick moment to the idea that the 504, the IEP team should be allowed to consider masks. Again, there are cases out there that say masks mandates may be a reasonable accommodation but that is not the same as saying that a mask mandate must be a reasonable accommodation and the school district is in its right to determine how to provide an accommodation for these students and to take an accommodation off the table so long as it reasonably accommodates the students, which the actual determination was that it did. Counsel, can I ask you, just reframing about what was asked below, I know that the motion, I'm going to read it, the motion for injunction had, and I quote, it was asking for an order requiring defendants to develop and implement policies, practices, procedures, and protocols for a multilayered COVID-19 mitigation strategy that follows CDC guidelines for COVID-19 prevention in K-12 schools and maintains consistency with the CDC guidelines in the event of subsequent changes so that plaintiffs can attend in-person school. I think that that then, as you've pointed out, transformed at the hearing to becoming a mask mandate, but from what I'm hearing, you believe that that has been offered, perhaps not dovetailed exactly what the CDC wants, but you've pointed out that there is a policy and procedure and practice that's been implemented, a 50-point plan, if you will, by the school board, and if that's not enough, we have virtual as well. So I'm trying to square up what was asked and what happened. You would agree with me that, in your view, you have done that already? In our view, we have done that. We have not strictly complied with CDC guidelines, which we believed is the relief that they were seeking from the district court, but we have reasonably accommodated them. May I make a concluding comment? You may. Your Honor, there are limitless ramifications to the appellant's demand for a court-created accommodation, strict compliance with the CDC guidelines, and mask mandates. I urge you to follow the Fifth Circuit's ruling in DC v. Paxton, where they said, take caution before expanding the ADA rights and providing a moving mask mandate level. We respectfully request that this court affirm the decision of the district court and leave the decisions of public health operations and administrative decisions to the school district. Thank you. Thank you, counsel. Mr. Choi, you've reserved some time for rebuttal. I just wanted to clarify a few points here. We are asking for remand so that what should have happened, the weight of evidence to determine reasonableness and necessity, whether it would fundamentally alter, take place. The school district did not consider, their policy does not allow consideration of anything else that contradicts its policy. We contend that masks is the most effective tool to combat this respiratory virus. It's just off the table. In any other context in the ADA, that simply would be a violation to not even consider accommodations that have been requested and just go by what the public entity deems is the rule. So it's the rigidity, it's the way it's administered, etc. Now, I want to go back to the district court's errors here. There is a suggestion that the district court found that the current accommodations are sufficient. What it held specifically was that students had, quote, meaningful access to education, that the robust virtual program ameliorates their concerns for in-class person. It concluded that so long as plaintiffs are offered meaningful access to education, defendants adequately accommodated them. And at the end of the order, footnote two, it said, for those reasons, we don't even need to get into reasonableness or efficacy of the requested accommodations by the students. And that's footnote two at the end of the order because it actually redefined the benefit. We use CDC because they are the experts. If the school district provides an alternative, instead of this de facto ban on the specifics that we are requesting, if they provide an alternative, certainly then we agree, you don't get your preferred accommodation. But they have not provided any alternatives other than to say, this is a one size fits all, take it or leave it district wide. And frankly, these children, they're being treated as disposable, like a cost of doing business in a COVID world. It's precisely this neutral across the board is why disparate treatment was an error there. Because disparate treatment, individuals with disabilities may need disparate treatment in the form of accommodations in order to comply with the ADA. But there has to be some statistical evidence to support disparate treatment, right? Well, disparate treatment requires intent to discriminate as well as you're treating children, or I'm sorry, individuals with disabilities differently than their peers. But this court and multiple courts have held that disparate treatment is required in some cases as far as disability rights law because they are entitled to accommodations. May I ask one more question? Your opponent said that the plaintiffs never requested more limited relief, such as masking of the children in the classroom where the plaintiffs have class. Is that correct? No, Your Honor. The issue, so my point, the district court's record, the city court was barren per document 50-3, where she was told anything that contradicts the policy is off the table. Ms. Grimby is a special education teacher in the school district. Also, in her affidavit, document 50-1, paragraph 7, masking in any regard as an accommodation is off the table. It can't even be talked about. And then for purposes of mootness, subsequently, I can say that it has been asked for, again, in a limited capacity. What these children are asking for is just consideration and that's what the ADA demands. All right. Thank you. Thank you. The court is in recess until 9 o'clock tomorrow morning. All rise.